475 So.2d 1060 (1985)
STATE of Louisiana
v.
David Allen TRAHAN.
No. 85-K-0400.
Supreme Court of Louisiana.
September 10, 1985.
*1061 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Jack Miller, Robert Cline, Asst. Dist. Attys., Jane Bode, Asst. Dist. Atty., for plaintiff-respondent.
Helen Roberts, Gravel & Brady, Alexandria, for defendant-applicant.
DIXON, Chief Justice.
The defendant was convicted of aggravated rape and sentenced to life imprisonment without benefit of probation or parole according to the sentencing mandate of the statute.
The incident arose on October 29, 1981. Defendant and a friend were driving near Church Point, Louisiana when they approached complainant's house; she walked out of the house, and defendant asked her for directions and for permission to use the bathroom.
The complainant showed Trahan to the bathroom. He emerged, according to complainant, carrying a small pistol. After yelling to his friend to keep a lookout, Trahan ordered her into the bedroom and told her to undress. He then had forced intercourse with her. There was no struggle. The doctor who examined complainant immediately after the incident testified that there was no evidence of trauma to any part of her body except for a small bruise on her arm. The complainant testified that she complied with the defendant's commands out of fear for her life and that of her two year old child who was playing in an adjoining room.
Defendant's story is substantially different. He testified that both he and his friend entered the house after permission was given to use the bathroom. The complainant then offered drinks to the two, which they accepted. The defendant stated that he could "see it in her eyes" that she wanted to have sex with him. After a brief conversation over drinks, the two withdrew *1062 to the bedroom and had sex. Defendant never contested that he had intercourse with the complainant. Consent was thus the only issue at trial.
The only corroborating witness was the defendant's friend (twenty-one years old at the time of trial) who testified consistently with the defendant's story. His credibility was attacked by the prosecution with prior convictions for DWI and drunkenness, and a poor and rather selective memory.
The issue in this case arose from defense counsel's attempt to impeach the complainant by showing bias, interest and corruption. The defense maintained that the victim's husband called the defendant's father and asked to meet with him concerning the trial. Mr. Trahan subsequently met with the husband, whereupon, according to the defense, the husband stated that he and his wife had agreed to drop the charges if Trahan would pay them $75,000. Unknown to the husband, Mr. Trahan tape recorded the conversation.
Defense counsel informed the district attorney of the existence of the tape and gave him a copy of it. The district attorney played the tape for the complainant and her husband. Their reactions to the tape are not known.
At trial, the defense attempted to ask complainant about the playing of the tape at the district attorney's office. The district attorney objected and requested that the jury be removed. The prosecution then argued that the playing of the tape and proof that the husband made the offer was irrelevant. It was also argued that the tape was hearsay.
Although the record is decidedly murky as to the actual rulings made to the various objections, the court seemed to rule that the playing of the tape was impermissible under any circumstances. The court did allow defense counsel to ask the complainant whether she and her husband had discussed dropping the charges in return for money. She admitted the discussion but added that she never seriously considered accepting the money. Defense counsel began another question about the tape recording but was prevented from finishing the question by the prosecution's sustained objection.
Defense counsel's next opportunity to establish that the complainant and her husband had offered to drop the charges in return for money came during the defendant's case in chief. Counsel called the husband to the stand and questioned him concerning the offer. Once again, numerous objections were made out of the presence of the jury. This time, though, the trial judge gave counsel almost free rein to examine the witness concerning the transaction. A single mention of the tape, however, was met with an objection.
During the cross-examination, the husband stated that the offer was made not by him and his wife but by the Trahans. He denied ever stating that he would accept $75,000 in return for dropping the charges.
Thus the defendant's contention that the complainant and her husband had taken the initiative in the transaction was refuted by the trial testimony. Defendant argues that the trial court erred in disallowing mention of the tape recording.
The record is not clear in certain instances as to what defense counsel actually attempted to do concerning introduction of the tape. Every time the tape was mentioned, the district attorney objected strenuously. The ensuing arguments and court rulings cut off counsel's attempts to get at the tape. It is also unclear why defense counsel did not call Mr. Trahan to the stand.
But in any case the recording obviously was valuable impeachment evidence. The husband denied that he had made an offer to the Trahans. The complainant denied any complicity in the offer. From the opening statement and closing argument of the state and the testimony at trial, it was clearly the state's position that Trahan approached the husband and tried to bribe him. This was exactly the opposite of what the defendant attempted to prove. The tape could have served to support the defendant's contention by showing that the *1063 complainant and her husband initiated the "compromise." It could also have impeached their credibility.
As mentioned before, defense counsel argues in brief that the tape demonstrated bias and corruption on the part of the complainant and her husband. Specifically, the defense contends that the willingness of the complainant and her husband to drop the charges in return for money casts doubt on their veracity. In addition, the defendant argues that the couple would necessarily have disclaimed making the offer out of fear and apprehension once the district attorney found out about the offer since it is a criminal offense for a witness to agree to accept money for testifying a certain way.
The court of appeal, 463 So.2d 108, did not decide the admissibility of the tape but ruled that the exclusion of the tape, if erroneous, was not reversible error. The court stated that the tape could not have served to show any additional bias beyond what was elicited from the witnesses at trial.
However, as noted above, the trial testimony was fatal to the defendant's contention of corruption on the part of the complainant and her husband. The reasoning of the court of appeal on this point is not supported by the record.
Our jurisprudence and that of the federal courts has consistently recognized the latitude given a defendant in demonstrating bias on the part of his accusers. See State v. Rankin, 465 So.2d 679 (La.1985). The rule stated in R.S. 15:492 is:
"When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest, or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same."
When the purpose is to show witness bias, interest or corruption, he may be questioned as to any particular fact tending to show it, and unless he admits it, any other witness may be examined to establish the fact. Likewise, any evidence may be used to demonstrate the particular fact.
The tape stands in this case as objective evidence of a conversation, of an effort toward a transaction relevant to the credibility, the bias, the interest, of important witnesses in the case. The tape recorded a conversation. The nature of that conversation was wholly relevant.
The "truth of the matter asserted therein"[1] is not at issue. Whether the conversation took place as the state contends or as the defendant contends is at issue, and was a legitimate area of inquiry by the defendant.
There is merit to the assignments concerning the tape.
The conviction and sentence are reversed, and the case is remanded to the district court for a new trial.
WATSON, J., dissents being of the opinion that the evidence in question is not relevant.
NOTES
[1] "`Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.'" State v. Martin, 356 So.2d 1370 (La. 1978).