535 So.2d 362 (1988)
STATE of Louisiana
v.
Paul STONE.
No. 88-KD-0924.
Supreme Court of Louisiana.
October 31, 1988.
Numa V. Bertel, Jr., Philip R. Johnson, Anne Turissini, Helen G. Berrigan, Orleans Indigent Defender Program, New Orleans, for applicant.
Harry F. Connick, Dist. Atty., Glen Woods, Mike Riehlmann, Asst. Dist. Attys., for respondent.
DIXON, Chief Justice.
The issue raised in this case is whether the State of Louisiana may reinstate the sentencing hearing of the defendant's trial and thereby subject him to capital punishment as a result of his conviction of first degree murder. The trial court granted the state's motion to reimpanel the jury; the defendant has appealed to this court. We reverse the decision of the trial court, finding that the execution of the defendant is prohibited by the Eighth Amendment of the United States Constitution as interpreted by the United States Supreme Court in Thompson v. Oklahoma, ___ U.S. ___, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988). The defendant has also claimed that there is no statutory authority for the procedure employed by the state in attempting to reinstate the sentencing phase of his trial. Since our decision is based on the constitutionality of the execution of the defendant, we do not reach that issue.[1]
*363 On February 19, 1987, Vincent Spedale was shot and killed during the course of an armed robbery of his store. The victim's wife, present at the robbery, gave a description of the two assailants, and on March 19, 1987 Paul Stone and Thilero Tapp were indicted for first degree murder. At the time of the commission of the crime, Paul Stone was fifteen years old.[2] At the first stage of the bifurcated trial, the defendant was found guilty of first degree murder by a unanimous jury. On the morning of the sentencing phase of the trial, negotiations between the state and counsel for the defendant resulted in an agreement whereby the defendant would testify for the state at the trial of his co-perpetrator, Tapp, in exchange for the state's promise to abandon the sentencing hearing and any effort to obtain the death penalty against the defendant. Under the agreement, the defendant was to receive a sentence of life imprisonment. The trial judge interrogated the defendant in chambers to assure that the defendant understood and consented to the terms of the agreement. In addition, the judge took a note of evidence as to what the defendant's testimony would be at the trial of Tapp. At this point, the judge dismissed the jury, the sentencing hearing was abandoned, and the sentencing of the defendant was suspended. On February 3, 1988 the defendant was called to testify at the trial of Tapp, but he refused to testify or be sworn. It is undisputed that the defendant was not represented by counsel at the time of his refusal to testify. The trial judge found the defendant in contempt and sentenced him to six months in the parish prison. The trial of Tapp ended in a hung jury, and a mistrial was declared.
On February 23, 1988 the trial judge granted the state's ex parte motion to impanel a new jury and reinstate the sentencing hearing. The defendant filed a motion to quash the proceedings, which was denied by the trial judge on March 16, 1988. On March 23, 1988 the defendant filed another motion to quash, urging the trial judge to reconsider its original decision and to allow the defendant to testify at the retrial of Tapp.[3] This motion was also denied by the trial judge. The defendant applied for writs and a stay order to this court which was granted on April 21, 1988. Because we find that the execution of the defendant would violate the Eighth Amendment as interpreted in Thompson v. Oklahoma, supra, we hold that the state is precluded from reinstating the sentencing hearing in the trial of the defendant.
In Thompson, a plurality of the United States Supreme Court held that it would be a violation of the Eighth Amendment[4] to execute a defendant who was under the age of sixteen at the time that he committed the offense. In that case Thompson was convicted of the brutal murder of his brother-in-law. At the time of the offense he was fifteen years old and classified under Oklahoma law as a child. However, Oklahoma also had a procedure whereby a child could be certified as an adult. Once certified, the defendant could be tried and sentenced as an adult. The state had the defendant certified as an adult and he was tried, convicted and sentenced to death.
Interpreting the Eighth Amendment under the "... evolving standards of decency that mark the progress of a maturing society...", Thompson v. Oklahoma, supra 108 S.Ct. at 2691, the plurality found that it would be unconstitutional to execute a defendant *364 under the age of sixteen. The opinion found indications of a consensus among the states that "... the imposition of the death penalty on a 15-year-old offender is now generally abhorrent to the conscience of the community." Thompson v. Oklahoma, supra 108 S.Ct. at 2697. The court considered the legislation of the states in setting the age at which a person could vote, marry without parental consent, purchase cigarettes and sit on a jury, and noted that a vast majority of the states did not confer these privileges on persons under the age of sixteen, presumably because of a lack of maturity, education, experience and judgment.
The Court also recognized that juveniles may be less culpable for their actions than adults, for the same reasons that those under the age of sixteen are denied many privileges available to adults. Stating that "[i]t is generally agreed `that punishment should be directly related to the personal culpability of the criminal defendant ...'", Thompson v. Oklahoma, supra 108 S.Ct. at 2698, the Court noted that juveniles are less mature than adults and are subject to influences and pressures that reduce their culpability for their actions. The Court also stated that the two recognized functions of the death penalty, retribution and deterrence, simply do not apply with the same force to an offender under the age of sixteen as they do to an adult.
Justice O'Connor concurred in the judgment of the Court. Although she believed that the consensus relied upon by the plurality was present, she was not willing to adopt it as a matter of constitutional law. Recognizing the special care and deliberation necessary before a state may impose the death penalty, she stated "... there is a considerable risk that the Oklahoma legislature either did not realize that its actions would have the effect of rendering 15-year-old defendants death-eligible or did not give the question the serious consideration that would have been reflected in the explicit choice of some minimum age for death-eligibility...." Thompson v. Oklahoma, supra 108 S.Ct. at 2711. She did not accept the premise that in not setting a minimum age for execution, the Oklahoma legislature was implicitly condoning the execution of any person tried as an adult. Despite her disagreement with the plurality opinion, she nonetheless stated, "... In this unique situation, I am prepared to conclude that petitioner and others who were below the age of 16 at the time of their offense may not be executed under the authority of a capital punishment statute that specifies no minimum age at which the commission of a capital crime can lead to the offender's execution." Thompson v. Oklahoma, supra 108 S.Ct. at 2711.
In the present case, it is undisputed that the defendant was fifteen years old at the time he committed the offense. The statutory scheme in Louisiana for allowing a minor under the age of sixteen to be tried as an adult is similar to that employed in Oklahoma at the time of the Thompson case.[5] There is no evidence that the Louisiana legislature made the type of conscious, deliberate decision to impose the death penalty *365 on those under the age of sixteen that Justice O'Connor found to be constitutionally mandated. Under both the plurality opinion and the concurrence of Justice O'Connor, the execution of Paul Stone would be unconstitutional.
The decision of the district court is reversed; the case is remanded to the district court for further proceedings not inconsistent with this opinion.
MARCUS, J., concurs and assigns reasons.
LEMMON, J., concurs, but except for the Thompson issue would allow a sentencing hearing before a new jury.
COLE, J., concurs with additional reasons.
COLE, Justice, concurring:
Thompson v. Oklahoma, ___ U.S. ___, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), dictates the result in this case. I agree completely with its analysis, concurring only to urge the Legislature of Louisiana to make clear whether or not the law of this state is to forbid the execution of any person for a crime committed before the age of sixteen. As pointed out by Justice O'Connor in her concurring opinion, supra 108 S.Ct. at pp. 2707, 2708, 2710:
When a legislature provides for some 15-year-olds to be processed through the adult criminal justice system, and capital punishment is available for adults in that jurisdiction, the death penalty becomes at least theoretically applicable to such defendants.
. . . .
[T]here is no indication that any legislative body in this country has rendered a considered judgment approving the imposition of capital punishment on juveniles who were below the age of 16 at the time of the offense.
. . . .
The day may come when we must decide whether a legislature may deliberately and unequivocally resolve upon a policy authorizing capital punishment for crimes committed at the age of 15 ... [W]e need not and should not decide the question today.
In light of the rule adopted by the rather weak plurality in Thompson, the State of Louisiana is called upon to decide expressly whether or not it wishes to permit the execution of a person under the age of sixteen years. Only when a state legislature has done so can the issue be put squarely to the United States Supreme Court for resolution.
MARCUS, Justice, (concurring).
Justice O'Connor in her concurring opinion in Thompson found that the Oklahoma legislature, as well as eighteen other state legislatures that have authorized capital punishment without setting any statutory minimum age for death eligibility, either did not realize that their actions would have the effect of rendering 15-year-old defendants death-eligible or did not give the question the serious consideration that would have been reflected in the explicit choice of some minimum age for death-eligibility. Our state legislature is included in those nineteen states. Accordingly, I feel constrained to concur in the majority opinion.
NOTES
[1] While it is not necessary to reach the issue of the authority of the state to reinstate the sentencing hearing, it is worth noting that there is no language in the Code of Criminal Procedure that would allow the state to impanel a new jury and conduct a sentencing hearing. C.Cr.P. 905 states: "Following the verdict of guilty in a capital case, a sentence of death may be imposed only after a sentencing hearing as provided herein." (Emphasis added). The procedure for conducting the hearing is set out in C.Cr.P. 905.1 et seq. Article 905.1 states: "Except as provided in Part B herein, the sentencing hearing shall be conducted before the same jury that determined the issue of guilt." (Emphasis added). Part B does grant the trial court the authority to impanel a new jury, but only in specified instances not applicable in the present case. The state could have obtained the result it desired in the present case in another manner. The state could have amended the indictment prior to trial to charge the defendant with second degree murder and entered into a plea bargain with the defendant to accept a guilty plea in exchange for his testimony against Tapp. If the state had proceeded in this manner, it could have sought to set aside the guilty plea if defendant breached the agreement; then defendant could have been tried for first degree murder. Seeking the death penalty in such a case would not have violated constitutional principles. Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987).
[2] There was some suggestion by the state at oral argument that there has never been any actual proof of the defendant's age at the time he committed the offense. In the record before us, the SCREENING ACTION FORM indicating that a true bill was returned by the grand jury, shows the defendant's date of birth to be January 2, 1972.
[3] Tapp was retried for second degree murder under an amended indictment, found guilty and sentenced to life imprisonment.
[4] The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."
[5] In fact, it can be argued that Louisiana provides less consideration as to the maturity of a person under the age of sixteen to be tried as an adult. Whereas Oklahoma provides for a procedure to have the child certified as an adult, in Louisiana the single act by the district attorney in charging the defendant with one of the enumerated crimes, subjects the defendant to trial and punishment as an adult. R.S. 13:1570 provides:

"Except as otherwise provided herein, the [juvenile] court shall have exclusive original jurisdiction in proceedings:
A. Concerning any child whose domicile is within the parish or who is found within the parish:
. . . . .
(5) Who violates any law or ordinance, except a child who, after having become fifteen years of age or older is charged with having committed first degree murder, second degree murder, manslaughter, aggravated rape, or a person who, after becoming sixteen years of age or older, is charged with having committed armed robbery, aggravated burglary, or aggravated kidnapping. Once such a child has been charged with having committed any offense listed in this Paragraph, the district court shall retain jurisdiction over his case, even though the child pleads guilty to, or is convicted of, a lesser included offense, and a plea to, or conviction of, a lesser included offense shall not revest the court exercising juvenile jurisdiction of such a child."