541 So.2d 801 (1989)
STATE of Louisiana
v.
John BROOKS.
No. 88-KD-1420.
Supreme Court of Louisiana.
January 30, 1989.
*802 Philip Johnson, Clyde Merritt, Numa Bertel, Orleans Indigent Defender Program, New Orleans, for applicant.
William J. Guste, Jr., Atty. Gen., Harry F. Connick, Dist. Atty., James A. Williams, Jack Peebles, Asst. Dist. Attys., for respondent.
COLE, Justice.
Defendant John Brooks was indicted by grand jury on eight counts of first degree murder in violation of La.R.S. 14:30. La.R. S. 14:30 provides:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery....
The state elected to sever and in October of 1987 tried the defendant on only four of the eight counts of murder. After a trial, the jury convicted defendant of all four murders but was unable to reach a unanimous verdict as to whether the sentence should be life imprisonment or death. Thus petitioner was sentenced to four consecutive life sentences. The results of that trial are currently on appeal to the Fourth Circuit Court of Appeal.
The state is now proceeding to trial on two of the remaining counts in the original *803 indictment. In connection with this second proceeding, the defendant filed several pretrial motions. These included: 1) a motion to be declared mentally incompetent to proceed to trial; 2) a motion to sever counts one and two; 3) a motion to quash evidence of the four prior murder convictions as aggravating circumstances under La.C. Cr.P. art. 905.4(A)(3); 4) a motion to quash defendant's confession and evidence of unrelated and unadjudicated crimes as character and propensity evidence under La.C. Cr.P. art. 905.2. The trial judge denied all these motions and defendant sought writs in this Court.
In his application, defendant raised the following assignments of error:[1]
1. The trial court erred in refusing to grant the defense request to sever count 1 from count 2, although, on the State's motion, it twice granted a severance, (without a Prieur hearing).
2. The court erred as a matter of law in finding that the accused was competent to proceed to trial in May of 1988 despite unrebutted defense testimony that the accused met none of the Bennett competency criteria.
3. The trial court erred in refusing to quash La.C.Cr.P. 905.4(A)(1) or in refusing to restrain the state from using evidence of "having been previously convicted of an unrelated murder," because they are still on appeal.
4. The trial court erred in refusing to quash 905.4(A)(3) despite due process vagueness of the "previously convicted" language as a constitutional issue affecting admissibility of "prior convictions."
5. The trial court erred in refusing to quash 905.4(A)(3) on the grounds of estoppel.
6. The trial court erred in refusing to quash the proceedings under 905.2 in view of the constitutionally infirm language of "character and propensities of the offender" in connection with the equally infirm language noted in 905.4(A)(3) ("previously convicted of an unrelated murder").
7. The trial court erred in refusing to restrict the state from its use of "propensity" evidence under C.Cr.P. 905.2 on the same grounds of estoppel as noted in Assignment of Error no. 5.
8. The trial court erred in refusing to restrict the state's use of "propensity and character" evidence and/or in the alternative, refusing to quash the statute because there is no defined standard of proof (which should be beyond a reasonable doubt) by which such "propensity" evidence is to be given to the jury.
9. The trial court erred in refusing to preliminarily restrict the prosecution from using such propensity evidence under any standard short of "proof beyond a reasonable doubt," in view of the fact that some unrelated crimes are to be put forth to the jury in the penalty phase, thus allowing an unconstitutional prejudicial and arbitrary factor to creep into the jury's penalty phase deliberations.
10. The court erred in finding that the statements/confessions of petitioner were free and voluntary, or alternatively, finding that this was so beyond a reasonable doubt.
In addition, petitioner's present counsel filed a brief after oral arguments were presented to the Court in which he argues that, because of mental deficiency, petitioner cannot be subject to the death penalty in light of Thompson v. Oklahoma, ___ U.S. ___, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988).
We granted writs and, after consideration, we now find, with the exception of assignment eight, petitioner's assignments are without merit. We agree with petitioner that guidelines to help the court in determining the admissibility of unadjudicated crimes at sentencing are necessary and thus adopt standards to govern the introduction of such crimes as character and propensity evidence under La.C.Cr.P. art. 905.2. We otherwise uphold the rulings of *804 the trial court and remand for proceedings consistent with this opinion.

FACTS
The grand jury indictment charged petitioner, who would have been 20 years old at the time of the crimes, with having committed a series of murders in connection with armed robberies in New Orleans between August 23 and December 28, 1986. In a trial held in October of 1987, defendant was found guilty of committing four murders, one of which took place early on Christmas morning in 1986 at the New Orleans lakefront. In a second, now pending proceeding, he is charged with having murdered Edward Harrison in the 1500 block of Annette Street at about 5 a.m. on November 9, 1986 and with having murdered Archie Chapman at the intersection of Humanity and Allen Streets at about 1:30 a.m. on November 15, 1986. The state alleges these two murders were committed with the same weapon and that defendant gave a detailed confession concerning both crimes.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant alleges he is entitled to a severance of the two counts on which he is now proceeding to trial. In the original indictment, these counts were numbered three and four. By pretrial stipulation, the counts were renumbered one and two to minimize the possibility of prejudice to defendant. Defendant argues the two counts are nevertheless improperly joined and he will be prejudiced at trial by joinder of the offenses.
Offenses may be joined in the same indictment in a separate count for each offense under La.C.Cr.P. art. 493:
if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
Here the offenses charged, two counts of first degree murder, are of the same character. Since the penalty for each offense is either death or life imprisonment, each requires the same mode of trial, a jury of twelve jurors, all of whom must concur in order for a sentence of death to be imposed. La.C.Cr.P. art. 782. Hence, the offenses were properly joined in the same indictment.
The general rule for severance of offenses is set out in La.C.Cr.P. art. 495.1, which provides:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
The motion to sever is addressed to the sound discretion of the trial court and the court's ruling should not be disturbed on appeal absent a showing of an abuse of discretion. State v. Williams, 418 So.2d 562, 564 (La.1982). In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. In determining whether joinder will be prejudicial, the court should consider the following:
whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant would be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.
State v. Washington, 386 So.2d 1368, 1371 (La.1980) (citations omitted).
Defendant argues joinder is improper under State v. Carter, 352 So.2d 607 (La. 1977). That decision has been superseded by amendment of La.C.Cr.P. art. 495.1 and our more recent jurisprudence interpreting the article. Under the new article, severance *805 need not be granted if prejudice can be effectively avoided by other safeguards.
[T]here is no prejudicial effect from the joinder of two or more offenses when the evidence of each offense is relatively simple and distinct, even though such evidence might not have been admissible in separate trials of the offenses because, with a proper charge, the jury can easily keep the evidence of each offense separate in its deliberations.
State v. Celestine, 452 So.2d 676, 680 (La. 1984) (citations omitted).
The state, meanwhile, argues it should be allowed to try both crimes in a single proceeding so the jury can evaluate defendant's claim that he is unable, due to mental defect, to form the criminal intent necessary to commit first degree murder. We have allowed the introduction of "similar offense" evidence to negate lack of intent due to insanity where the subsequent act was strikingly similar. State v. Monroe, 364 So.2d 570, 573 (La.1978). Here, the state concedes the murders of Edward Harrison and Archie Chapman were not "signature" crimes, in the sense that proof of one crime shows a system used by the defendant. In fact, the state has made no showing that commission of one crime shows intent to commit the other. On the record before us, we cannot say whether such a showing can be made and we, thus, do not reach the issue.
The state has offered further grounds in support of its argument that joinder is proper, contending the crimes are simple ones and the jury will easily be able to keep the evidence of each separate. The state also contends joinder is proper because the murders occurred near each other in time and place and the bullet which caused death in each murder allegedly came from the same weapon.
We find defendant has made no showing, under the standards of art. 495.1 and Celestine, supra, that the joinder of these two murder counts has prejudiced him. The state is not seeking to try a multiplicity of crimes together. The two offenses are relatively simple and the jury is unlikely to confuse the evidence and the charges. We thus find the trial judge did not err in denying defendant's motion to sever. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial court erred in finding he was competent to proceed to trial. Specifically, defendant argues he made an unrefuted showing under the standards of State v. Bennett, 345 So.2d 1129 (La.1977) (on rehearing), that he is incompetent to stand trial due to moderate to severe mental retardation and organic brain damage.
It is fundamental to our adversary system of justice that a defendant who lacks the capacity to understand the proceedings against him or to assist counsel in preparing a defense may not be subjected to trial. La.C.Cr.P. art. 641; Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). In Bennett, we said:
when mental retardation, alone or in combination with a mental disease or defect, is so severe as to impair a defendant's capacity to understand the object, nature and consequences of the proceedings against him, to consult with counsel in a meaningful way, and to assist rationally in his defense, that defendant is, within the contemplation of our law, incompetent to stand trial.
Bennett, 345 So.2d at 1136-37 (citations omitted).
The defendant has the burden of establishing incapacity, because Louisiana law presumes the defendant is sane and responsible for his actions. La.R.S. 15:432; State v. Perry, 502 So.2d 543, 549 (La.1986). The defense must prove by a clear preponderance of the evidence the defendant is incompetent to stand trial as a result of a mental disease or defect. State v. Machon, 410 So.2d 1065, 1067 (La.1982); see also, La.C.Cr.P. art. 641. While a court is permitted to receive the aid of expert medical testimony on the issue, the ultimate decision of competency is the court's alone. La.C.Cr.P. art. 647; State v. Rogers, 419 So.2d 840, 843 (La.1982).
*806 Defense counsel asserts proof of defendant's incapacity to stand trial has been unrebutted. Such claims are exaggerated. In fact, there is a great amount of conflicting evidence in the record concerning the issue of defendant's mental competency.
Before defendant's first trial on four counts of murder, a pretrial sanity hearing was held. At that hearing, held in August of 1987, Dr. Kenneth Ritter and Dr. Thomas Haynie, two members of the sanity commission appointed in this case, testified they found defendant competent to stand trial. The defense stipulated the third member of the commission, Dr. Ignacio Medina, would agree with the findings of Dr. Ritter.
These doctors' opinions were based in part on testing administered at their request by Dr. Nancy Rummage, a psychologist who placed defendant's I.Q. at 62. Dr. Ritter, who specializes in forensic psychiatry, testified that because of the gravity of the charges against defendant, the sanity commission requested the performance on defendant of other tests, including specialized skull X-rays and an encephalogram. These revealed no evidence of brain abnormality which might contribute to incompetency.
Dr. Ritter, who has evaluated over 2000 inmates for their ability to understand the nature of the proceedings against them and to aid their attorney at trial, later reiterated his belief in defendant's competency at the sentencing phase of the first trial. Also testifying at that hearing was Dr. Ciro Juarez-Nunez, director of the psychiatric unit at the Orleans Parish prison, where defendant has been held since his arrest.
Dr. Juarez, who saw defendant on at least a weekly basis after he was transferred into the psychiatry unit following a suicide attempt, testified defendant serves as a unit tier representative, acting as an intermediary between the ten or so people in his tier and prison officials. Dr. Juarez also stated his belief that defendant is able to appreciate the nature of the proceedings and charges against him.
At the sentencing hearing of the 1987 trial, the defense also presented evidence, consisting of testimony by Dr. Marc Zimmerman, a clinical psychologist. Dr. Zimmerman had conducted a three or four hour examination of defendant and concluded that he was moderately retarded, with a mental age of eight, and that he was suffering from brain damage. Despite this testimony, defendant was found competent and sentenced.
The issue of defendant's sanity was raised once again in pretrial motion in the now pending second trial. The trial court has since conducted two more hearings in which testimony on the issue of defendant's sanity has been presented: one on February 5, 1988 and another on May 10, 1988. At the February hearing, defendant again presented testimony by Dr. Zimmerman, who has served on "five or six" sanity commissions and who testified solely on the basis of the examination he had conducted in the previous October in preparation for his testimony at the prior trial.
Dr. Zimmerman again testified defendant was moderately retarded, an opinion based on defendant's 1982 and 1987 I.Q. scores of 44. At this proceeding, however, Dr. Zimmerman now said defendant's mental age was somewhere between 10 and 12 years old. Dr. Zimmerman also testified defendant could stand trial, "but it would be extremely difficult.... [H]e does have some ability to learn and comprehend. But it would be ... a very long, tedious protracted task."
On the other hand, Dr. Zimmerman acknowledged defendant's I.Q. scores have varied widely, with the high score of 67 attained in a test administered in 1977, the same year in which he scored 44 on another I.Q. test. As Dr. Zimmerman conceded, a gap between highest and lowest scores of 23 points is unusual. He also conceded on cross-examination that five experts have testified for the state that defendant is a malingerer, one whose test results, for either lack of cooperation or some other reason, do not accurately reflect his mental ability.
*807 Finally, the issue of competency was considered most recently in a May 1988 hearing, in which Dr. Zimmerman once more appeared for the defense, along with Dr. Doris LeBlanc, who is, as Dr. Ritter, an expert in forensic psychiatry. Dr. LeBlanc did not conduct psychological tests on defendant, but examined him in April of 1988 and based her testimony on that hour and a half interview. She also interviewed defendant's mother.
It was Dr. LeBlanc's opinion that defendant showed signs of brain damage at an early age. In a written report, she discussed the facts that defendant was a special education student in elementary school and was unable to complete high school. She noted his long history of psychological problems and found him somewhat anxious and depressed at the time she interviewed him. Dr. LeBlanc concluded defendant was unable to appreciate the nature of the proceedings or charges against him.
Also appearing at this most recent hearing was Dr. Ritter, who had examined defendant in the preceding week. He again testified that even though defendant is retarded, the level of retardation is not so severe as to impair his competency to proceed. Moreover, when faced with the wide fluctuation in I.Q. scores registered by defendant, Dr. Ritter said he believed the most recent score of 62 obtained by Dr. Rummage was the more accurate one.
Significantly, Dr. Ritter said even though a score of 60 is the usual cutoff point for competency, I.Q. alone is not the sole determinative of ability to stand trial, but that other factors are considered in making a competency determination. Dr. Ritter's opinion is, therefore, in accord with our decisions holding that mere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity. Bennett, 345 So.2d at 1136.
Relevant factors to a competency determination include the fact that defendant learned to drive and was able to operate an automobile in New Orleans traffic. At one time, he drove a forklift and worked for Goodwill. As Dr. Ritter testified, these situations are not ones in which a severely retarded person could function well. In addition, the record shows defendant has acted as something of a group leader in prison.
In the May 1988 interview with defendant, Dr. Ritter testified he had spoken with defendant concerning "motivation" for the crimes he is charged with having committed and Ritter found defendant's account of his activities to be "not unreasonable." He also believes defendant is aware of what transpired and what he is now faced with. In short, Dr. Ritter believes defendant understands the nature of the charges and proceedings against him, and thus is competent to stand trial under the criteria established in Bennett, 345 So.2d 1129.
Experts for both the state and defense have testified I.Q. can change with time; thus, defendant could have been competent to stand trial in October 1987 and not be competent now. The record clearly shows expert medical opinion on defendant's mental status is sharply divided. Nevertheless, on the record before us, we do not find defendant has established by a clear preponderance of evidence that, as a result of mental infirmity, he is at this time incompetent to stand trial.
Under our jurisprudence the trial judge's determination of mental capacity to assist at trial is entitled to great weight, especially where the evaluation of credibility or the resolution of conflicting well-founded medical testimony is concerned. State v. Jones, 376 So.2d 125, 127 (La.1979). Here the judge evaluated the conflicting evidence and found defendant competent to proceed. We believe this determination to be correct. Perry, 502 So.2d at 549. We thus allow the trial court's ruling to stand.

ASSIGNMENT OF ERROR NO. 3
The state intends to introduce evidence of defendant's conviction on four counts of murder from the previous trial for jury consideration as aggravating circumstances at the sentencing phase of the now pending trial. In this assignment, defendant argues the trial court erred in allowing the state to use these prior convictions *808 as evidence of aggravating circumstances because they are now being appealed and are not final.
Defendant contends allowing the state to use evidence of the convictions from the first trial before they have been affirmed on appeal could introduce an arbitrary factor into the current proceedings and thus invalidate the results, should the jury in this second proceeding vote to impose a death penalty.
La.C.Cr.P. art. 905.4 provides:
A. The following shall be considered aggravating circumstances:
. . . .
(3) The offender has been previously convicted of an unrelated murder....
According to La.C.Cr.P. art. 905.2, evidence of aggravating circumstances "shall be relevant" for the jury's consideration at the sentencing phase of a capital case, where focus is on the "character and propensities of the offender."
We have previously held evidence of a prior conviction can be introduced to impeach the credibility of a witness even though such conviction has been appealed and is not yet final. La.R.S. 15:495; State v. Shelton, 377 So.2d 96, 99 (La.1979). This jurisprudence follows the "vastly preponderant American view" that prior convictions, even though on appeal, may be used for impeachment purposes provided that the trier of fact may likewise be informed of the pendency of the appeal. State v. Rhodes, 351 So.2d 103, 104 (La. 1977). This rule has been incorporated into the recently enacted Code of Evidence which became effective on January 1, 1989. La.C.Ev. art. 609.1, provides:
A. General criminal rule. In a criminal case, every witness by testifying, subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
. . . .
D. Effect of pending post-conviction relief procedures. The pendency of an appeal or other post-conviction relief procedures does not render the conviction inadmissible, but may be introduced as bearing upon the weight to be given the evidence of the conviction.
Code of Evidence, as enacted by 1988 Acts, No. 515, art. 609.1.
This rule stems in part from the recognition that relatively recent convictions have greater probative value, although these are the very ones most likely to be on appeal. Rhodes, 351 So.2d at 104. The rule also reflects concern that the "exclusion of convictions still on appeal might well encourage frivolous appeals and dilatory tactics by defendants seeking to avoid the use of prior convictions for impeachment in pending criminal actions." Id., citing United States v. Soles, 482 F.2d 105, 108 (2d Cir. 1973).
In this case, the state intends to introduce defendant's nonfinal convictions not merely for the purpose of impeachment but as evidence of aggravating circumstances under La.C.Cr.P. art. 905.4(A)(3). The usual prohibition against the jury hearing evidence of other crimes, when such evidence tends merely to show a defendant's bad character, is not applicable in the penalty phase of a capital trial because La.C. Cr.P. art. 905.2 focuses inquiry on defendant's character.
In such a proceeding, we have said the defendant's character is at issue and indeed is one of the principal issues. State v. Sawyer, 422 So.2d 95, 104 (La.1982). In Sawyer, we said evidence of the prior conviction was not only relevant, but also competent and reliable. Id. at 104. Thus, evidence of a defendant's prior convictions is admissible during the penalty phase of a first degree murder trial on the issue of his character. State v. Brown, 514 So.2d 99, 105 (La.1987); State v. Ward, 483 So.2d 578 (La.1986), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 168 (1986); State v. Jordan, 440 So.2d 716 (La.1983). Moreover, evidence of conviction for unrelated offenses is admissible during the penalty phase even if defendant does not place his character at issue. Sawyer, 422 So.2d at 103-04.
While our prior jurisprudence has not established whether evidence of nonfinal convictions may be introduced as evidence *809 of aggravating circumstances, we find at least four other jurisdictions have allowed the use of such evidence. See e.g., State v. Smith, 146 Ariz. 491, 707 P.2d 289 (1985); State v. Jordan, 126 Ariz. 283, 614 P.2d 825 (1980); Ruffin v. State, 397 So.2d 277 (Fla.1981); Commonwealth v. Morales, 508 Pa. 51, 494 A.2d 367 (1985). See also, N.J.S.A. 2C:11-3c(4)(a), whereby the New Jersey legislature provided for use of nonfinal convictions as aggravating factors, overruling a contrary decision in State v. Biegenwald, 96 N.J. 630, 477 A.2d 318 (1984).
We believe the considerations discussed in Rhodes, supra, apply with equal force in this context. We agree with the Florida Supreme Court that "[a] defendant previously convicted of a violent felony against the person of another should not be able to escape this character analysis by an argument that his conviction, which is presumed to be correct, is on appeal." Ruffin, 397 So.2d at 283. Thus, we find nonfinal convictions admissible as evidence of aggravating circumstances under La.C. Cr.P. art. 905.4(A)(3).
It is possible, as defendant argues, that such evidence could introduce an arbitrary factor into the proceedings if the jury hears evidence of nonfinal convictions which are subsequently reversed. The existence of this possibility means the state suffers the risk of reversal of any penalty which might be imposed at a second trial should the nonfinal convictions be reversed. However, in that case defendant will be adequately protected because of the availability of post-conviction relief. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
In his fourth assignment, defendant attacks as unconstitutionally vague the term "previously convicted" in La.C.Cr.P. art. 905.4(A)(3)'s listing of prior felonies to be considered as aggravating circumstances for sentencing purposes. As a consequence of this alleged vagueness, he argues we should not construe the statute to allow introduction of prior conviction for crimes which were committed after the crimes for which he will now stand trial.
Defendant's first trial involved murders which were committed between November 27 and December 28, 1986. The murders for which he is now facing trial were committed on November 9 and 15 of 1986. Thus, defendant has been previously convicted of four murders which were committed after the two counts of murder involved here. He asserts the legislature has failed to clearly state whether the jury can consider as aggravating circumstances all crimes of which a defendant has been convicted, even if those crimes were committed after the crimes upon which he is now being tried. He asserts such vagueness in the statute should be construed to his benefit and that the evidence should be thus barred.
On the other hand, the state argues since defendant has the right to present mitigating evidence with respect to his conduct after the offense for which he is being tried, Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), it should likewise be allowed to introduce evidence of aggravating circumstances which occurred after the crime for which defendant is now being tried.
La.C.Cr.P. art. 905.4(A)(3) allows as consideration of aggravating circumstances only prior convictions for the most serious crimes of violence or those carrying the greatest risk of personal harm: murder, aggravated rape, aggravated burglary, aggravated arson, aggravated escape, armed robbery, and aggravated kidnapping. These crimes have more than a marginal relevance to the offender's propensity for violence. Given La.C.Cr.P. art. 905.2's focus at sentencing on the "character and propensity of the offender," it seems unlikely that the legislature meant to reach only defendants who have been undeterred by the community's previous criminal sanctions.
Although we have not previously addressed this issue, we find other states, in the absence of explicit legislative direction, have generally found aggravating circumstances, similar to those in art. 905.4(A)(3), include any conduct occurring prior to the sentencing hearing. See e.g., Francis v. *810 State, 473 So.2d 672, 677 (Fla.1985); State v. Steelman, 126 Ariz. 19, 612 P.2d 475 (1980); Elledge v. State, 346 So.2d 998 (Fla. 1977); State v. Terry, 257 Ga. 473, 360 S.E.2d 588 (1987); Stephens v. Hopper, 241 Ga. 596, 247 S.E.2d 92 (1978); Leatherwood v. State, 435 So.2d 645 (Miss.1983), cert. denied, 465 U.S. 1084, 104 S.Ct. 1455, 79 L.Ed.2d 772 (1984), remanded, 473 So.2d 964 (Miss.1985); State v. Caldwell, 671 S.W.2d 459 (Tenn.1984).
In ruling on the question, the Supreme Court of Mississippi said, "[c]rimes committed by a defendant after having committed a capital offense have just as much or more bearing on the question of his character, criminal tendencies, and whether he should suffer the death penalty, as do crimes committed by him prior to having committed the capital offense." Leatherwood, 435 So. 2d at 652 (emphasis in original). This view is in accord with our own legislative directive that the sentencing hearing in a capital case focus on "the character and propensities of the offender." La.C.Cr.P. art. 905.2.
Contrary to defendant's argument, we find no lack of clarity in the statute. As the Tennessee Supreme Court has said, "`previously convicted' clearly indicates that the date of the conviction, not of the commission of the crime is the important factor. The order in which the crimes were actually committed is irrelevant, as long as the convictions have been entered before the sentencing hearing at which they are introduced into evidence." Caldwell, 671 S.W.2d at 465.
For these reasons, we find no error in allowing the state to use previous convictions which otherwise meet the requirements of La.C.Cr.P. art. 905.4(A)(3) as evidence of aggravating circumstances, even if such previous convictions involve crimes committed after the crimes for which the defendant is now being sentenced. The assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 5 & 7
In these assignments, the defendant argues evidence of aggravating circumstances and character and propensity which the state plans to introduce should be barred on the basis of collateral estoppel.
Specifically, defendant argues evidence of the prior convictions on four counts of murder should not be admissible as aggravating circumstances under La.C. Cr.P. art. 905.4(A)(3) in a second trial since the first jury was not able to unanimously recommend the death penalty on the basis of these convictions. Similarly, testimony by two alleged victims of defendant's armed robbery and murder attempts was presented to the jury under La.C.Cr.P. art. 905.2 as character and propensity evidence. Defendant argues since this prior testimony did not persuade the jury to vote for death, the state should be estopped from attempting to introduce such evidence again.
The doctrine of collateral estoppel applies only in cases where defendant's first jury has decided issues of ultimate fact. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); State v. Knowles, 392 So.2d 651, 655 (La.1980). In this case, the defendant's first jury could not agree on the issue of whether he should live or die, and his sentence of life imprisonment at hard labor was imposed by operation of law. La.C.Cr.P. art. 905.8. Thus, the doctrine is inapplicable.
Defendant also urges the state has manipulated its charging powers by severing counts of the original indictment in order to multiply the number of aggravating circumstances, in case the jury at defendant's first trial did not return the death penalty. We find this claim lacks merit on two grounds.
First, under La.C.Cr.P. art. 61, broad discretion is accorded the district attorney who has "entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." Second, the multiplicity of aggravating circumstances against a defendant does not necessarily bring the state closer to a recommendation of death in Louisiana because aggravating circumstances are not weighed against mitigating circumstances. State v. *811 Flowers, 441 So.2d 707, 716 (La.1983), rev'd on other grounds, Flowers v. Blackburn, 779 F.2d 1115 (5th Cir.1986).
These assignments are without merit.

ASSIGNMENT OF ERROR NO. 6
In this assignment, defendant makes a constitutional attack on the language of La.C.Cr.P. art. 905.2, under which the state proposes to introduce evidence of defendant's character and propensity for consideration by the jury at sentencing.
Defendant contends first that the statutory meaning of "character and propensities of the offender" is vague. In addition, he argues evidence of crimes allegedly committed after the ones for which he is now being tried should not be admissible as evidence of his character and propensity.
Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. State v. Griffin, 495 So.2d 1306, 1308 (La.1986) (citations omitted). Defense counsel has failed to support the allegation that the term "character and propensities of the offender" is impermissibly vague by merely providing quotations from Webster's New World Dictionary.
This case is distinguishable from State v. David, 468 So.2d 1126 (La.1984), where we found impermissible vagueness in the use of "significant prior history of criminal activity" as an aggravating circumstance under La.C.Cr.P. art. 905.4. In David, we said the subjective meaning of the phrase provided no standard for the jury and left the court and jury free to react to nothing more than their own predilections. The statute could not stand because it failed to channel the jury's discretion in such a way as to rationally distinguish a case in which the death penalty is imposed from the many in which it is not. Id. at 1130.
We find no such subjectivity in the language from La.C.Cr.P. art. 905.2. It is our belief that the words "character," "propensities," and "offender" each have generally accepted meanings which give the jury adequate notice of the concept being described and intended by the legislature. We believe this aggravating circumstance thus meets the requirements established by the United State Supreme Court, which has held a state seeking to impose the death penalty must channel the sentencer's discretion by "clear and objective standards" that provide "specific and detailed guidance," and that "make rationally reviewable the process for imposing a sentence of death." Godfrey v. Georgia, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980).
We also find without merit defendant's second argument that evidence of crimes allegedly committed after the ones for which he is now being tried should not be admissible under La.C.Cr.P. art. 905.2. Our holding that crimes committed after the one for which defendant is now on trial are admissible as aggravating circumstances under La.C.Cr.P. art. 905.4(A)(3) applies with equal force to character and propensity evidence under La.C.Cr.P. art. 905.2. Thus, acts committed after those for which defendant is now on trial can properly be considered by the jury in its focus on the character and propensities of the offender.
The assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 8 & 9
Defendant next asserts the trial court was in error in ruling admissible testimony concerning unadjudicated crimes as character and propensity evidence to be considered by the jury at sentencing under La.C.Cr.P. art. 905.2.
The defendant asserts this ruling was in error for two reasons. First, defendant alleges the state intends to introduce evidence of as many as sixteen unrelated crimes and he contends admission of this evidence would be cumulative, prejudicial, and impossible to defend against. Second, he argues evidence of unadjudicated crimes should not be allowed in the absence of standards whereby the trial judge can determine the relevancy and sufficiency of the evidence.
*812 The question of admissibility of unadjudicated crimes has been presented to the United States Supreme Court four times within the last two years and the Court has denied certiorari in each instance. See e.g., Sharp v. Texas, ___ U.S. ___, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); Miranda v. California, ___ U.S. ___, 108 S.Ct. 2026, 100 L.Ed.2d 613 (1988); Devier v. Kemp, ___ U.S. ___, 108 S.Ct. 338, 98 L.Ed.2d 365 (1987); Williams v. Lynaugh, ___ U.S. ___, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987). While we have not squarely addressed the question in our prior jurisprudence, in looking to the law in other jurisdictions, we find the states have divided in their approach to the question.
Several states have held a state may not introduce evidence of unadjudicated crimes to prove a statutory aggravating factor at the sentencing phase of a capital trial. State v. Bobo, 727 S.W.2d 945, 952-53 (Tenn.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987); State v. McCormick, 272 Ind. 272, 397 N.E.2d 276, 280 (1979); Cook v. State, 369 So.2d 1251, 1257 (Ala.1979). In State v. Bartholomew, 98 Wash.2d 173, 654 P.2d 1170 (1982), remanded, 463 U.S. 1203, 103 S.Ct. 3530, 77 L.Ed.2d 1383 (1983), opinion after remand, 101 Wash.2d 631, 683 P.2d 1079 (1984), the Supreme Court of Washington said allowing a jury which had already convicted a defendant to consider evidence of prior alleged offenses was unreasonably prejudicial since such a jury was unlikely "fairly and impartially" to weigh such evidence. 683 P.2d at 1086.
On the other hand, at least seven states have allowed the introduction of unadjudicated crimes at a capital sentencing hearing under a variety of circumstances. See e.g., People v. Heishman, 45 Cal.3d 147, 246 Cal.Rptr. 673, 753 P.2d 629 (1988); Skipper v. State, 257 Ga. 802, 364 S.E.2d 835 (1988); People v. Whitehead, 116 Ill.2d 425, 108 Ill.Dec. 376, 508 N.E.2d 687 (1987), cert. denied, ___ U.S. ___, 108 S.Ct. 307, 98 L.Ed.2d 266 (1987); State v. Wagner, 305 Or. 115, 752 P.2d 1136 (1988); State v. Middleton, 295 S.C. 318, 368 S.E.2d 457 (1988); Briddle v. State, 742 S.W.2d 379 (Tex.Crim.App.1987); Williams v. Commonwealth, 234 Va. 168, 360 S.E.2d 361 (1987).
Since we are without firm guidance from the United States Supreme Court on the issue and the states are clearly divided in their approach, we must examine our own jurisprudence in order to determine which of these paths is the correct one. We, therefore, begin with a general consideration of our cases dealing with the issue of admissibility of evidence of other crimes in any proceeding against a defendant, and then narrow our focus to the question of admissibility of evidence of unadjudicated crimes at the penalty phase of a capital case.
The danger in allowing evidence of other crimes committed by defendant in the guilt phase of trial is the risk that defendant will be convicted because of his bad character, irrespective of his guilt of the particular crime. Because a conviction should be based on guilt and not on character, evidence of other crimes is generally inadmissible in the guilt phase unless the probative value of the evidence outweighs its prejudicial effect and unless other safeguards are met. State v. Hamilton, 478 So.2d 123, 129 (La.1985).
At the penalty phase, however, guilt has already been determined. While the character of a defendant is irrelevant to the determination of guilt, it is one of the factors upon which the jury must focus in determining sentence. La.C.Cr.P. art. 905.2. We have previously held evidence of an unrelated crime is admissible in the penalty phase of a capital case as character and propensity evidence if the defendant has been convicted of that crime. Sawyer, 422 So.2d at 103; Jordan, 440 So.2d at 720 (La.1983).
Moreover, defendant does not have to put his character at issue for evidence of convictions to be admissible. It is axiomatic that the conviction per se puts the offender's character at issue. Jordan, 440 So.2d at 720. This principle is supported by the clear language of La.C.Cr.P. art. 905.2. However that article also provides the sentencing "hearing shall be conducted *813 according to the rules of evidence." We have interpreted this to mean that only competent evidence that is relevant to the character and propensities of the accused is admissible under La.C.Cr.P. art. 905.2. State v. Lowenfield, 495 So.2d 1245, 1257 (La.1985). In that decision we found a bare bill of information filed by the district attorney charging defendant with an unrelated crime was not competent evidence of defendant's character. Id.
The question of admissibility of evidence of unadjudicated crimes at the penalty phase of trial was raised again in State v. Hamilton, 478 So.2d 123, but not addressed because the state failed to provide the defendant with notice of intent to present such evidence. At that time, we said fundamental fairness dictates that an accused receive adequate prior notice that evidence of unrelated criminal activity may be offered by the prosecutor in an effort to punish him for the charged crime. Id. at 132.
We have also previously decided the state may present evidence of pending charges when the defendant presents testimony which affirmatively places his character at issue, State v. Wingo, 457 So.2d 1159, 1168 (La.1984), or when he makes an issue of the unrelated crime as part of his own case at the guilt stage. State v. Rault, 445 So.2d 1203, 1215 (La.1984). We have also fixed the "outer limit of admissibility" of unadjudicated crimes by requiring that the evidence must be competent, and it must be sufficient to convince the trier of fact that [defendant] did in fact commit the other crime. Lowenfield, 495 So.2d at 1257 (La.1985).
Finally, the introduction of unadjudicated crimes at the penalty phase was at issue in State v. Ward, 483 So.2d 578 (La.1986). There, we found evidence of unadjudicated sex crimes admissible because some of the crimes with which defendant was charged had been dropped as the result of a guilty plea. Additionally, testimony concerning acts in the dropped charges was given by the same family members who were victims of sex crimes identical to those for which defendant was then being tried. In that instance, we believed no surprise, no undue prejudice and no arbitrary factor were injected into the deliberations of the jury. Id. at 589.
Here, defendant made a January 29, 1988 supplemental application for a bill of particulars to which the state responded with notice of intent to introduce as character and propensity evidence at the sentencing stage of the forthcoming trial, "[a]ll previous convictions of the defendant and all prior testimony from his previous penalty hearing."
In this answer, the state has given defendant notice of intent to use the four previous murder convictions. In addition, the state has indicated it will introduce, as it did at the first trial, testimony by two victims in pending attempted murder and attempted armed robbery cases against defendant. Also offered at that first trial was testimony by two police officers who established the chain of custody over a spent pellet and matched the pellet to a pistol retrieved from defendant. Finally, the state presented an exhibit showing defendant's prior conviction for an unspecified crime. This evidence, contrary to defendant's assertion of the state's plan to introduce evidence of as many as sixteen unadjudicated crimes, does not appear cumulative, prejudicial or unduly burdensome to defend against.
Moreover, we are not persuaded by defendant's assertion that evidence of unadjudicated crimes should not be presented to the jury for consideration at the sentencing phase of a capital case in its focus on the character and propensities of the offender. We believe such evidence can be relevant and helpful to the jury in its determination of the appropriate sentence to be imposed once guilt has been decided.
We still must determine, however, the standards which will govern the admission of such evidence. For purposes of the federal rules of evidence the United States Supreme Court requires the government to prove other, unadjudicated crimes by the defendant by a mere preponderance of the evidence. Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d *814 771 (1988). At the other end of the spectrum, California requires the state to prove unadjudicated crimes beyond a reasonable doubt before the evidence can be introduced. People v. Howard, 44 Cal.3d 375, 243 Cal.Rptr. 842, 749 P.2d 279 (1988).
In our own decisions dealing with the admission of evidence of unrelated crimes during the guilt phase of trial, we have required clear and convincing evidence that defendant committed the other crimes. State v. Moore, 440 So.2d 134, 137 (La. 1983); State v. Walker, 394 So.2d 1181, 1184 (La.1981); State v. Prieur, 277 So.2d 126, 129 (La.1973). We believe this standard is equally appropriate in the context of the sentencing phase of trial.
For these reasons, we hereby adopt guidelines fashioned after those set out in Prieur, supra, and first proposed in State v. Ward, 483 So.2d 578, at 591-92 (Lemmon, J. concurring) (La.1986). Under these principles, we hold evidence of unadjudicated crimes at the sentencing phase of the trial will be admissible once a trial court determines: 1) the evidence of defendant's connection with commission of the unrelated crimes is clear and convincing; 2) the proffered evidence is otherwise competent and reliable; and 3) the unrelated crimes have relevance and substantial probative value as to the defendant's character and propensities, which is focus of the sentencing hearing under La.C.Cr.P. art. 905.2.
On the record before us, it cannot be determined whether the evidence of unrelated, unadjudicated crimes meets these criteria, and hence, we remand for the trial judge to make that determination in accord with this decision.

ASSIGNMENT OF ERROR NO. 10
In a supplement to his original writ application, defendant assigned as additional error the finding by the trial court that the statements/confessions of petitioner were free and voluntary, or, alternatively, finding that this was so beyond a reasonable doubt.
The defendant asserts the state has failed to meet its burden of showing knowing and voluntary waiver of constitutional rights because it has presented no evidence of such waiver. Defendant further contends the state will be unable to meet this burden because the defendant, due to mental deficiency, is incapable of making a knowing and voluntary waiver.
Whenever the state seeks to admit a confession, it must prove beyond a reasonable doubt that the statement was freely and voluntarily given, and that no threats or promises were made to induce the defendant into giving the statement. La.R.S. 15:451. State v. Nuccio, 454 So.2d 93, 100 (La.1984). Voluntariness of a confession is a question of fact and the trial judge's ruling thereon, based on conclusions of credibility and weight of the testimony, is given great weight. Such ruling will not be disturbed on appeal unless clearly unsupported by the evidence. State v. Thornton, 351 So.2d 480, 484 (La.1977).
With respect to the relationship between diminished mental or intellectual capacity and involuntariness, this Court has noted that such a condition does not of itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Lindsey, 404 So.2d 466, 472 (La. 1981) (citations omitted).
Before defendant's first trial, the state expressed intent to offer into evidence a confession dealing with the murders with which he was charged as well as other unrelated crimes. Defendant moved to suppress the confession and a hearing was held. The trial court denied the motion to suppress on May 4, 1987 after hearing testimony by Officers Morales and Reynolds.
On October 17, 1987, counsel moved to reopen the hearing to suppress, arguing an interview between defendant and psychologist Dr. Marc Zimmerman revealed defendant suffered from brain dysfunction due to brain damage and, hence, "legally could not confess to the charges" he was facing. The state's response on October 20, the day before defendant's first trial began, was to stipulate it would not use the confession at trial. The defense motion therefore became moot. The trial court denied the motion on that basis and neither officer Morales *815 nor Reynolds was subsequently called at either the guilt or sentencing phase of that first trial.
The question of defendant's capacity prompted the trial judge, who also presided at the first trial, to grant a hearing on February 5, 1988 on defendant's attempt to reopen the motion to suppress. At this hearing, the only testimony presented was that of Dr. Marc Zimmerman, who had interviewed defendant in October of 1987 and who again testified that, due to brain damage, defendant was incapable of making a voluntary and knowing waiver of his constitutional rights. Following this hearing, the trial judge denied the motion to suppress the confession.
The state failed in the bill of particulars furnished in connection with the now pending proceeding to inform defendant that it plans to use his confession at this second trial. In oral arguments before this Court, however, the state indicated it plans to do so.
The confessions of defendant are not in the record; thus, we have no knowledge of the contents of or the conditions under which such statements may have been made. Also not in the record is the testimony or the statements of the officers who testified at the initial hearing on the motion to suppress defendant's confession. Since the Court has not been provided with the transcripts necessary in order to determine the admissibility of the confession, we defer consideration of the merits to post-verdict proceedings in the event the confession is used and the defendant is convicted. At that time the Court will have a full and complete record and the issue will be properly before it.

POST-ARGUMENT ASSIGNMENT OF ERROR
In a final post-argument brief, defendant argues the United States Supreme Court's decision in Thompson v. Oklahoma, ___ U.S. ___, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) and our own decision in State v. Stone, 535 So.2d 362 (La.1988) have import for his case. Those decisions both dealt with the constitutionality of execution of a juvenile. Defendant argues the application of principles in those two decisions would, by analogy, bar the execution of defendant because due to intellectual deficiency, he is a "mental juvenile."
This issue was raised after this Court granted defendant's writ. Since the case is presently here under supervisory jurisdiction solely for the purpose of review of rulings on pretrial motions, it would be premature for us to consider the constitutionality of a death sentence which has not, and may in fact never be, imposed. At this point, there has not even been a determination of whether the defendant is guilty of the crimes with which he is charged.
We also note the United States Supreme Court has granted a writ of certiorari to consider in part the question of whether the state may execute a defendant with the mental age of a seven-year-old child. Penry v. Lynaugh, ___ U.S. ___, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988). Until a decision in that case is rendered, the law on the question remains uncertain. For these reasons, we pretermit discussion of the issue.

DECREE
The rulings of the trial court on defendant's pretrial motions are upheld, with the exception that the trial court will have to determine whether evidence of unadjudicated crimes is admissible at sentencing in accord with the principles set out herein. We remand for proceedings consistent with this opinion.
LEMMON, J., concurs.
CALOGERO, J., concurs disagreeing only with treatment of the severance issue.
DENNIS, J., concurs in part and dissents in part with reasons.
DIXON, C.J., dissents with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent from the majority conclusion that the defendant was competent to stand trial. Further, I would hold that the record before us does not support the state's contention that it has proved *816 beyond a reasonable doubt that the defendant made a knowing and voluntary waiver of his constitutional rights when he confessed to the crimes in question.
At the request of the defendant, a competency hearing was held on May 10, 1988. The defense presented the testimony of Dr. Zimmermann and Dr. LeBlanc. Dr. Zimmermann testified that the defendant suffers from brain dysfunction, and while he might be able to understand the seriousness of the situation he was faced with, it would only be on a childlike level. He was of the opinion that the memory of the defendant could not be trusted, and he could not adequately assist counsel.
The defendant also called Dr. Doris LeBlanc, an expert in the field of forensic psychiatry. She had interviewed both the defendant and his mother. She also reviewed his family background and medical records. Although she did not perform any tests upon him, she was of the opinion that he was moderately retarded and suffered from brain damage. She placed his I.Q. in the range of the mid 40s to the low 60s. She stated her opinion that the defendant was not competent to stand trial and that he did not meet any of the "Bennett" criteria[1] for competency. When questioned as to the opinions of the other experts who stated that the defendant was capable of standing trial, she adhered to her belief that hers was the "best professional opinion." When cross-examined by the state about the fact that the CAT scan showed no evidence of brain damage, she stated that such a test would not necessarily detect the type of brain damage that she thought was present in the defendant.
The state called Dr. Ritter who conceded that the defendant was retarded, but was of the opinion that he was capable of standing trial. He also stated that the normal the level for determining incompetency to stand trial was 60 or below, and conceded that the defendant had scored as low as 44 in previous I.Q. tests. However, he stated that there are other factors to be considered. He was particularly impressed with the fact that the defendant was able to drive a car, operate a fork-lift, and hold down a job at Goodwill. He discounted the value of the earlier I.Q. test taken in 1982 that placed the defendant at 44, and felt that the test he ordered performed by Dr. Rummage was more accurate. That test placed the defendant's I.Q. at 61. He stated that he felt that the defendant could adequately assist in his defense.
After the competency hearing on May 10, 1988, the trial judge ruled that the defendant was competent to stand trial. The defendant argues that this finding was erroneous under the criteria set out in State v. Bennett, 345 So.2d 1129, 1136 (La.1977) on rehearing. In Bennett, we stated that "It is fundamental to an adversary system of justice that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." This prohibition is also recognized in the Code of Criminal Procedure. C.Cr.P. 641 states:
"Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense."
It is also well established in our jurisprudence that the defendant bears the burden of proving that he is incompetent. However, as stated in Bennett, "Mere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity." 345 So.2d at 1136. The crucial question is whether the defendant can effectively participate in the criminal proceedings again him. "The decision as to a defendant's competency to stand trial should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case and the gravity of the decisions with which he is faced." 345 So.2d at 1138. The factors set out in Bennett to determine if the defendant is fully aware and can appreciate the nature of the proceedings include: whether *817 he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understands the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction.
The factors to examine in determining if the defendant can adequately assist counsel, as set out in Bennett, include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well explained alternatives; whether if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
As we recognized in Bennett, "the ultimate responsibility for [a competency] determination must rest in a judicial rather than a medical authority." 345 So.2d at 1137. While there was conflicting testimony as to the intelligence of this defendant, the experts were generally in agreement that he was moderately retarded. Although the experts disagreed as to the I.Q. of the defendant, none of them placed it above 61. Dr. LeBlanc, testifying for the defense, stated that in her opinion the defendant did not meet any of the Bennett criteria. She questioned the defendant as to whether he understood the fact that he was going to serve four life sentences for his previous convictions, and was of the opinion that he did not seem to appreciate that fact. She also testified that she did not believe that he realized the seriousness of the situation. When asked if he had discussed the case with his attorneys, she stated that he was reluctant to talk about the subject, and became anxious and disoriented. Dr. Zimmermann testified that he did not think that the memory of the defendant could be trusted. Given the fact that the defendant is being tried for two murders, and the state proposes to introduce the fact of four previous convictions, this lack of memory could be disastrous. There was also testimony by Dr. Zimmermann that the defendant would have trouble following the testimony of witnesses, especially if the testimony included concepts that carried over from one witness to another. While Dr. Zimmermann was of the opinion that the defendant might be able to follow the proceedings if they were conducted slowly, he stated that his comprehension would only be that of a child. As we stated in Bennett, "due process, however, requires a level of effective participation by an accused in criminal proceedings against him." 345 So.2d at 1137. As in Bennett, there was testimony that the defendant could understand the proceedings and assist his attorneys "within his capabilities." The real question, however, is the extent of those capabilities. This defendant has met his burden of showing that he is incapable of adequately assisting counsel and comprehending the seriousness of the situation.
Next, the defendant argues that the trial court erred in holding that the confessions that he made were a result of a knowing and intelligent waiver of his constitutional rights to remain silent and to have an attorney present. A review of the suppression hearing reveals that the state presented no evidence. As the defendant correctly asserts, the burden of proving a knowing and intelligent waiver lies with the state. The state must prove beyond a reasonable doubt that the confession was knowing and intelligent. State v. Glover, 343 So.2d 118 (La.1977) on rehearing. The state did not call the police officers who read the defendant his Miranda rights, nor did they present any evidence that would allow this court to find that the waiver was knowing and intelligent. On the other hand, there was testimony from Dr. Zimmermann that the defendant would not comprehend his rights unless they were explained to him very slowly, with the officer repeatedly *818 explaining the importance of each statement. As we stated in State v. Anderson, 379 So.2d 735, 736 (La.1980): "The critical factor in all such cases is whether or not the defendant was able to understand the rights being explained to him." Given the admitted retardation of the defendant, and the testimony of Dr. Zimmermann that he functions at the age of a ten-twelve year old child, and is subject to the compulsion that such a child would face if confronted with an authoritarian figure like a police officer, I cannot say that the defendant made a knowing and intelligent waiver of his constitutional rights.
For these reasons, I respectfully dissent from the portion of the majority opinion that finds that the defendant is competent to proceed. In addition, I would hold that the record supports a finding that the state failed in its burden of proving that the defendant made a knowing and intelligent waiver of his constitutional rights when he made the confessions.
NOTES
[1] These assignments are taken verbatim from defendant's application and supplemental application.
[1] State v. Bennett, 345 So.2d 1129 (La.1977) on rehearing.